Henry C. Goss and Elsa R. Goss v. Commissioner.
Goss v. Commissioner
Docket No. 1694-62.
United States Tax Court
T.C. Memo 1963-242; 1963 Tax Ct. Memo LEXIS 102; 22 T.C.M. (CCH) 1219; T.C.M. (RIA) 63242; September 10, 1963
*102 A. Pearley Feen, 119 S. Winooski Ave., Burlington, Vt., for the petitioners. Lawrence A. Wright, for the respondent. FAY
Memorandum Opinion FAY, Judge: The respondent determined a deficiency of $52,859.98 in the petitioners' income tax for the year 1958. The only issue for decision is whether the redemption of some of its stock by a corporation in which Henry was a stockholder constituted a dividend to Henry. All of the facts are stipulated and are found as stipulated. The petitioner are husband and wife residing at 17-19 Central Street, St. Johnsbury, Vermont. They filed their joint Federal income tax return for the year 1958 with the district director of internal revenue for the District of Vermont. The petitioner Elsa is a party solely because of her joinder in a joint return; thus, whenever the term "petitioner" is used it will refer to Henry. The C. H. Goss Company is a corporation organized under the laws of the State of Vermont, having its principal office at St. Johnsbury, Vermont. On October 27, 1950, of the 1,572 outstanding shares of stock in the C. H. Goss Company 1,556 were held by "Trustees under the Will of Charles H. Goss" for five trust beneficiaries, *103 the petitioner, his three sisters and a nephew. On April 11, 1956, the petitioner acquired the stock held on behalf of his sisters, paying each of them $25,000 for the 311 1/5 shares to which each was entitled. At the same time the petitioner purchased from the trustees the stock held on behalf of his nephew. After these purchases the petitioner held 1,556 shares of the stock in his own name. The petitioner borrowed money to make these purchases from Henry G. Darling of Lyndonville, Vermont. He gave Darling a series of five notes dated April 11, 1956, each for $20,000 and bearing 3 percent interest per annum. The first of these notes was due one year from the date of the loan and the remaining notes fell due one each year for each of the next four years. These notes were secured by the deposit of 1,556 shares of C. H. Goss Company stock with the lender. As a result of the petitioner's financial inability to meet the payment on the first note, 933 3/5 shares of stock in the C. H. Goss Company were transferred to Darling in return for the cancellation of the five notes given him by the petitioner. On August 30, 1957, at a special meeting of the stockholders of the C. H. Goss *104 Company the following resolution was adopted: RESOLVED, that the Articles of Association be changed, altered and amended by incorporating in such Articles the following provision: No stockholder shall offer, either at public or private sale, any or all of the stock standing in his name on the books of the corporation unless prior thereto he shall and will offer the said shares of stock to both the corporation and to the other stockholders of the corporation individually or collectively and he shall retain his certificate or certificates subject to said offer and to the said right of purchase for twenty (20) days from the date of the offer and tender. The said offer shall be in writing and shall be addressed and delivered to both the said corporation and to each of the stockholders thereof at the last known address of the said stockholder as set forth on the books of the corporation and as certified by the Clerk. The selling price of such stock shall be Ninety-seven Dollars and fifty-three cents ($97.53) per share if the offer of sale is made on or before April 1, 1958. The price shall be One Hundred and Six Dollars and eleven cents ($106.11) per share if the offer of sale is *105 made between April 1, 1958 and April 1, 1959, and the price shall be One Hundred and Fourteen Dollars and sixty-eight cents ($114.68) per share if the offer of sale is made between April 1, 1959 and April 1, 1960. The corporation and each of the stockholders shall be deemed to have an option for the purchase of said stock so offered in the following manner: (a) The option to the corporation shall expire ten (10) days from the date of the delivery to the Clerk of the corporation of the offer to sell. (b) The option to each of the stockholders shall expire twenty (20) days from the date of the mailing to them of the offer to sell, which offer can be made simultaneously with the offer to the corporation as provided in (a) above. In the event of the failure of the corporation to exercise the option to purchase any or a portion of the stock offered for sale, the stockholders of the corporation may purchase the whole or such part thereof as is available in the event of a purchase of a portion thereof by the corporation and shall purchase the same only in the same proportion as his holdings of stock bear to the total then issued and outstanding. The term "issued and outstanding" shall *106 not include treasury stock. Should any of the stockholders, after the failure of the corporation to exercise the option, be unable or unwilling to purchase any part thereof, then any stockholder or group of stockholders may have the right to purchase the whole or any part then remaining for five (5) days after the expiration of the twenty (20) days herein set forth, and upon the failure of the stockholders to avail themselves of the opportunity to purchase the stock after the expiration of said twenty-five (25) days from the date of the notice. Then, and thereupon, the stockholder or stockholders who have offered his or their stock for purchase and sale as herein provided shall have the complete and absolute right to sell at public or private sale his or their holding, or so much thereof as shall not have been purchased under the provisions of this paragraph, free and clear of the rights of preemption herein set forth. This amendment and the rights herein provided shall continue and remain in full force and effect until April 1, 1960 and shall have no further force and effect after April 1, 1960. Certificates of common stock shall, in addition to the usual data contained therein, *107 contain this amendment of the Articles of Association which may be printed on any part of the certificates. On August 30, 1957, the petitioner entered into an agreement with Darling which contained the following provisions: 1. That at the request in writing of GOSS, after March 15, 1958, DARLING shall within ten (10) days tender his [shares] of stock to CORPORATION and the stockholders thereof at the price set forth in the Amendment to the Articles of Association dated August 30, 1957 payable in cash, and upon the failure of the CORPORATION, or any stockholder, to elect to exercise the option provided by the Articles of Association, as therein provided, then, and in such event DARLING will offer said shares to GOSS upon the terms and conditions and as provided in Paragraph 2 following. 2. That DARLING will sell and deliver to GOSS all shares of CORPORATION registered in his name at any time when CORPORATION, and its stockholders, shall fail to exercise the option provided in the Amendment to the Articles of Association dated August 30, 1957 for the price set forth in said Amendment to the Articles of Association payable in cash. 3. That GOSS will purchase, when offered by *108 DARLING, the shares of CORPORATION held by DARLING, at any time after April 1, 1960 after DARLING has complied with the Articles of Association and CORPORATION and its stockholders have failed to exercise the option as therein provided. The price shall be ONE HUNDRED AND FOURTEEN DOLLARS AND SIXTY-EIGHT CENTS ($114.68) per share payable in cash. It is the intent and purpose of this provision to impose a firm obligation on the part of GOSS to purchase any shares of CORPORATION held by DARLING after April 1, 1960 and a firm obligation on the part of DARLING to sell said shares to GOSS upon demand by GOSS after April 1, 1960. 4. This agreement shall be binding upon the parties hereto and their respective heirs, executors, administrators and assigns. On March 28, 1958, Darling offered his stock to C. H. Goss Company, pursuant to the terms of the amendment to the Articles of Association set forth above. The letter by which he made this offer was as follows: In accordance with the Stock Sales provision of the Articles of Association of C. H. Goss Company, I do hereby give notice that I wish to dispose of my stock at the first option price as provided therein. Unless this stock is *109 purchased first by C. H. Goss Company within ten days from April 1, 1958 or thereafter by its stockholders within twenty days from April 1, 1958 as therein provided, I shall feel free to then dispose of said stock at private or public sale. The Board of Directors of C. H. Goss Company voted on April 2, 1958, to accept Darling's offer and cause the corporation to repurchase his stock. On April 10, 1958, the C. H. Goss Company repurchased the 933 3/5 shares of stock held by Darling for $91,000, which approximated the price provided in the Articles of Association of $97.53 per share. Following this purchase, the outstanding stock of C. H. Goss Company was held as follows: No. of Shares
Henry C. Goss
624 2/5
L. C. Aldrich
10
H. S. Brooks
1
Henry C. Goss, Jr.
1
D. C. Hawley
1
The respondent determined that the payment made by the Goss Company to Darling to repurchase his stock constituted a dividend to the petitioner and included it in his income for the year 1958. None of the $91,000 which the Goss Company paid to Darling in purchase or redemption of all of the latter's 933 3/5 shares of stock in the corporation was distributed to or received either directly *110 or indirectly by the petitioner. The petitioner contends that by the corporate payment of $91,000 to Darling the corporation was simply redeeming all of the stock of a shareholder and, therefore, the payment could not be considered a dividend to anyone. We agree with the petitioner. It is well established that if a corporation pays the debt of a shareholder (including a debt incurred by the shareholder to purchase additional stock in the corporation) the payment may be a dividend. (C.A. 4, 1947). However, if a corporation redeems all of the stock of a shareholder there is no dividend to the remaining shareholders merely because their proportionate ownership of the corporation has increased. (C.A. 3, 1958), reversing and remanding . . The question here, then, is whether Darling, at the time his stock was redeemed, was a bona fide independent shareholder in the Goss Company. We see no controlling difference between the factual situation here and that with which we were faced in *111 We, therefore, resolve this question in favor of the petitioner. There is one difference between this case and the Priester case which we feel requies some comment. In the Priester case we laid some stress upon the fact that the redeemed shareholder, one Pinkerton, realized a profit of some $13,000. This was evidence of the fact that Pinkerton was an investor in the stock involved in that case and not a mere "straw man." In the present case we have not been furnished the amount that Darling loaned the petitioner. We are, then, unable to determine what, if any profit Darling made from the transaction. However, the respondent does not contend that Darling acted entirely for the accommodation of the petitioner and received no profit on the transaction. Indeed, he urges that Darling held his stock for six months in order to qualify his gain for capital gains treatment. In any event, the aura of the transaction and the circumstances surrounding it convince us that Darling was indeed an independent party and not a "straw man" or a mere pawn for a tax avoidance scheme of the petitioner. Decision will be entered for the petitioners.